# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                                                    **Case No. 01-CR-108**

**ORVILLE COCHRAN**
    **Defendant.**

## DECISION AND ORDER

I sentenced defendant Orville Cochran to 60 months in prison on his guilty plea to conspiracy to commit racketeering. Defendant now seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that he is at increased risk of severe illness from COVID-19 based on his age (71) and health conditions (heart disease and hypertension). He further contends that, since he has now served more than 85% of his sentence (with a projected release date of August 22, 2021), none of the purposes of sentencing require that he serve out the last few months of his prison term. He accordingly asks the court to reduce his sentence to time served. For the reasons that follow, I grant his motion.

### I. FACTS AND BACKGROUND

Defendant was a member, and at times president, of the Chicago south-side chapter of the Outlaws Motorcycle Club. In furtherance of the Outlaws "war" with rival biker clubs, various members committed racketeering acts. In pleading guilty to racketeering conspiracy, defendant admitted that he agreed two racketeering acts would be committed by members, and that he was present and participated in the events that comprised each of these acts. The first concerned a plan to confront, assault, and murder rival bikers at the Illiana speedway in Indiana

in June of 1994. Ultimately, no rival bikers appeared, and the Outlaws eventually left the speedway. (PSR ¶¶ 14-19.) The second pertained to a plan to confront, assault, and murder rivals at the International dragway in Indiana in June of 1996. Rain resulted in the eventual cancellation of the races and bands, and most people left. The Outlaws remained the entire three days, but no rival bikers showed up and no confrontation occurred. (PSR ¶ 21.)

The government indicted the case in 2001, but defendant remained a fugitive until he was apprehended in April 2017 trying to shoplift a back brace. (PSR ¶ 2, 60.) At the time he appeared before me for sentencing on January 4, 2019, defendant was 69 years old, with a fairly limited and (by then) quite dated prior record: unlawful use of a weapon in 1969 (PSR ¶ 52), reckless conduct, unlawful use of a weapon, and assault in 1969 (PSR ¶ 53), resisting an officer in 1973 (PSR ¶ 54), criminal damage to property in 1984 (PSR ¶ 55), and retail theft in 1994 (PSR ¶ 56). He fell in criminal history category I under the sentencing guidelines, which recommended 87-108 months in prison. (PSR ¶¶ 58, 103.)

Pursuant to their plea agreement, the parties jointly recommend 60 months' imprisonment, and I found such a sentence sufficient to satisfy the purposes of sentencing. I concluded that this sentence adequately punished defendant for this dangerous conduct and deterred others, while acknowledging his advanced age, health issues, and limited prior record. Defendant is currently serving his prison sentence at FMC Rochester, with a projected release date of August 22, 2021.

On January 19, 2021, defendant filed the instant motion for compassionate release. I directed the government to respond and permitted defendant to reply. The matter is ready for decision.

2

Case 2:01-cr-00108-LA   Filed 03/03/21   Page 2 of 16   Document 466

## II.  DISCUSSION

A. **Compassionate Release Standards**

Section 3582(c)(1)(A) authorizes the district court to grant what is commonly known as "compassionate release."  The statute provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).  The statute contains three requirements: (1) the defendant must first make a request to the warden before applying to the court; (2) the defendant must then demonstrate to the court that "extraordinary and compelling reasons" warrant a reduction in his sentence; and (3) the court must determine whether, even if such reasons are shown, a reduction of the sentence would be inconsistent with the applicable 18 U.S.C. § 3553(a) factors.  United States v. Cole, No. 08-CR-327, 2021 U.S. Dist. LEXIS 2404, at *5 (E.D. Wis. Jan. 7, 2021) (citing United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019)).

1. **Exhaustion**

Before 2018, compassionate release could be granted only on a motion from the BOP. United States v. Sanford, 986 F.3d 779, 781 (7th Cir. 2021).  However, the First Step Act of 2018 amended the compassionate release statute to permit the court to adjudicate a motion

3

directly from the defendant—provided, however, that the defendant must first present his request for compassionate release to the warden and exhaust administrative appeals or wait 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. Id. at 781-82. The Seventh Circuit has held that, while this "exhaustion" requirement is not jurisdictional, it is a mandatory claim-processing rule which must be enforced if raised by the government. Id. at 782; see also United States v. Williams, 987 F.3d 700, ___, 2021 U.S. App. LEXIS 3762, at *4 (7th Cir. Feb. 10, 2021) (holding that "an inmate is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court").

### 2. Extraordinary and Compelling Reasons

The statute does not define the term "extraordinary and compelling reasons." Rather, Congress instructed the Sentencing Commission, in promulgating general policy statements regarding the sentence modification provisions in § 3582(c)(1)(A), to describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. See 28 U.S.C. § 994(t).[1] The Commission's policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the

---

[1]Congress did state that: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id. Courts have held that "while rehabilitative efforts alone will not support compassionate release, the court may take such efforts into account as part of the analysis." United States v. Anderson, No. 14-CR-186, 2020 U.S. Dist. LEXIS 187983, at *13 (E.D. Wis. Oct. 8, 2020); see also United States v. Hudson, 967 F.3d 605, 613 (7th Cir. 2020) (noting that the court may in deciding a First Step Act motion consider the defendant's post-sentencing conduct as part of the § 3553(a) analysis).

4

factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction . . .

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary to the policy statement indicates that extraordinary and compelling reasons exist under these circumstances:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Commission has not updated the policy statement, which purports to require a motion from the director of the Bureau of Prisons, see U.S.S.G. § 1B1.13 cmt. n.4, since the passage of the First Step Act, which allowed defendants to bring their own motions. Accordingly, "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of §3582(c)(1)(A) does not curtail a district judge's discretion." United States v. Gunn, 980 F.3d 1078, 1080 (7th Cir. 2020); see also United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

Giving the statutory terms their common meaning, a defendant seeking compassionate release must demonstrate that his situation is extraordinary, i.e., beyond what is usual, customary, or regular, and his need for release compelling, i.e., irreparable harm or injustice will result if relief is not granted. United States v. Scott, 461 F. Supp. 3d 851, 862 (E.D. Wis. 2020); see also Gunn, 980 F.3d at 1080 (noting that the Commission's analysis can guide discretion without being conclusive). In the context of the COVID-19 pandemic, courts have found that modification may be warranted if the prisoner demonstrates that he is particularly

6

vulnerable to the virus based on his age, health status, or other specific circumstances; on the other hand, courts have tended to deny compassionate release requests based on general concerns about possible exposure in prison. E.g., United States v. Dover, No. 14-CR-196, 2020 U.S. Dist. LEXIS 133340, at *16-17 (E.D. Wis. July 28, 2020); see also United States v. Thomas, No. 1:11-CR-22, 2020 U.S. Dist. LEXIS 172963, at *6-7 (N.D. Ind. Sept. 22, 2020) (explaining that § 3582(c)(1)(A) contemplates a sentence reduction based on the particular circumstances of where the defendant is housed and his personal health conditions).

### 3. Section 3553(a) Factors

Finally, if the court decides that extraordinary and compelling reasons have been shown, it must also consider the applicable § 3553(a) factors to determine whether the sentence should be modified. See United States v. Saunders, 986 F.3d 1076, 1078 (7th Cir. 2021) ("Because of the importance of the § 3553(a) factors, courts are not compelled to release every prisoner with extraordinary and compelling health concerns."). Those factors include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to the victims of the offense. 18 U.S.C. § 3553(a). In some cases, a court may find that the relevant § 3553(a) factors outweigh the extraordinary and compelling reasons warranting compassionate release and/or that release would undermine the goals of the original sentence. United States v. Bartlett, No. 06-CR-273, 2020 U.S. Dist. LEXIS 101393, at *13-14 (E.D. Wis. June 9, 2020).

**B.     Defendant's Motion**

   **1.     Exhaustion**

Defendant made a request for compassionate release to the warden on April 25, 2020, citing his age and health conditions, which placed him at high risk of complications from COVID-19.  (R. 458 at 6; R. 458-1.)  As more than 30 days have passed since he made his request, defendant contends that he has satisfied the exhaustion requirement.

The government disagrees, noting that the warden denied defendant's request on June 22, 2020, stating that defendant did not meet the criteria for release under the BOP's program statement.  (R. 462 at 5; R. 462-1.)  The government notes that defendant presents no evidence that he appealed the warden's decision, thereby exhausting his administrative remedies; nor is there evidence that he resubmitted his request after he contracted COVID-19 in October 2020.  (R. 462 at 6; see R. 462-4 at 1-2.)  Rather, without any explanation, he waited more than six months to bring the instant motion.  (R. 462 at 6.)  The government notes that § 3582(c)(1)(A) is a mandatory claim-processing rule, which must be enforced where, as here, it is raised by the government.  (R. 462 at 6.)

The court may reduce a sentence on the defendant's motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf <u>or</u> the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, <u>whichever is earlier</u>."  18 U.S.C. § 3582(c)(1)(A) (emphasis added).  Under the plain language of the statute, "a defendant need not exhaust all available administrative appeals of the warden's denial of the request, so long as defendant waits thirty days before seeking judicial relief."  United States v. Rosado, No. 3:14-cr-162(VLB),

8

2021 U.S. Dist. LEXIS 23320, at *14 (D. Conn. Feb. 8, 2021); see also United States v. Harris, 973 F.3d 170, 170 (3d Cir. 2020) (accepting the government's concession that its argument regarding exhaustion was in error, and noting that the "statute states that the defendant may file the motion thirty days after the warden receives his request."); United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them."); United States v. Eberbaugh, No. 2:18-00222-02, 2020 U.S. Dist. LEXIS 148264, at *4 (S.D.W.V. Aug. 18, 2020) ("[T]he majority of district courts, as well as the only appellate courts to have considered this issue, have ruled that prisoners who seek compassionate release under Section 3582 are not required to fully exhaust all administrative remedies available to them, so long as 30 days have passed from the warden's receipt of the request.").

It is true that defendant did not resubmit his request after he contracted COVID-19 last fall, but the government develops no argument that his motion presses a different ground for compassionate release than did his request to the warden.[2] It is also true that defendant waited longer than he needed to before filing his motion, but it is unclear why that requires denial.[3] I accordingly find that defendant has satisfied the exhaustion requirement.

**2.    Extraordinary and Compelling Reasons**

Defendant seeks release based on his advanced age, now 71, and health conditions, including atrial fibrillation and hypertension. (R. 458 at 3, 6; 460 at 1, 3, 5.) He presents more

---

[2] As defendant notes in reply, he does not argue that his COVID infection is a basis for release, only that it does not cancel out his grounds for release. (R. 464 at 3.)

[3] In reply, defendant notes that the delay is attributable to a backlog in processing prisoner requests at Federal Defender Services. (R. 464 at 3.)

9

than 1000 pages of medical records confirming his health problems. (R. 460.) He further notes that he is "overweight" based on a BMI (body mass index) of 27.8. (R. 458 at 3; R. 460 at 73.)

The CDC has warned that older adults are at greater risk of requiring hospitalization or dying if diagnosed with COVID-19 (with 8 out of 10 reported COVID-19 deaths in adults 65 and older),[4] and that adults of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19.[5] See United States v. Lewellen, No. 09-CR-0332 (-2), 2020 U.S. Dist. LEXIS 90195, at *11 (N.D. Ill. May 22, 2020) (noting that courts have relied on the CDC's list of risk factors when assessing compassionate release motions during the COVID-19 pandemic). Specifically, the CDC has indicated that heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and pulmonary hypertension increase the risk of severe illness, and that other cardiovascular or cerebrovascular disease, such as hypertension (high blood pressure), might increase the risk of severe illness from COVID-19.[6] The CDC has further indicated that being overweight, with a BMI of 25-30, might increase a

---

[4]https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited March 2, 2021).

[5]https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited March 2, 2021).

[6]https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#heart-conditions (last visited March 2, 2021). The CDC does not specifically list atrial fibrillation, although there is research suggesting this condition could heighten COVID-19 risks. https://www.webmd.com/lung/news/20201109/got-a-fib-it-could-heighten-covid-risks#1 (last visited March 2, 2021).

10

person's risk.[7]

Defendant contends that for prisoners with such COVID-19 risk factors release is the best way to keep them safe during the pandemic. Even the BOP's best mitigation efforts cannot change the fact that "the social distancing and other hygienic measures the CDC recommends . . . are difficult if not impossible to follow in prison." (R. 458 at 7, quoting United States v. Ramsey, No. 18-CR-163, 2020 U.S. Dist. LEXIS 118681, at *12 (E.D. Wis. July 7, 2020).)

Defendant acknowledges that he contracted COVID-19 in October 2020, experiencing symptoms including gastrointestinal complaints, headache, shortness of breath, and loss of taste. (R. 458 at 3; R. 460 at 525-48, 567, 590-628.) Fortunately, he recovered from the infection, but he continues to complain of low energy. (R. 458 at 3; R. 460 at 579.) He notes that, while persons who have recovered may have immunity for a period of time, reinfection is possible (R. 458 at 8), with some of those cases more severe than the first (R. 458 at 9). Finally, he notes the emerging research regarding long-term effects, including permanent heart and lung damage, risk of stroke, and fatigue. (R. 458 at 10.) Given these uncertainties, courts around the country have granted release to inmates who previously tested positive. (R. 458 at 11, collecting cases.)

In response, the government concedes that the CDC has identified advanced age as a risk factor, while hypertension might increase risk. (R. 462 at 7.) But, the government notes, defendant has presented no medical report opining that his conditions are so serious as to warrant placement other than at FMC Rochester, a federal medical facility for inmates requiring

---

[7]https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (last visited March 2, 2021).

11

specialized or long-term care. (R. 462 at 7-8.) The government surmises that many if not most inmates at this facility will have conditions placing them at higher risk, and defendant does not show that he is unique among them. His records further reflect that he is receiving excellent care. (R. 462 at 8.) While there have been COVID cases at FMC Rochester, there are no reported deaths. (R. 462 at 8-9.) The government contends that defendant's own COVID case weighs against release, as his symptoms were mild and his recovery rapid. (R. 462 at 9-10; R. 462-4 at 6-38.) While he continues to complain of low energy, he made similar complaints prior to his infection. (R. 462 at 10; R. 462-5.) The government contends that, having contracted and recovered from the virus, defendant has likely developed a natural immunity which will protect him for some period of time. (R. 462 at 10.) The government cites studies suggesting a level of immunity for up to six months or more. (R. 462 at 10-11.) Finally, the government notes that the BOP has commenced a vaccination program, with elderly and seriously ill inmates given highest priority (although defendant has not yet received the vaccine). (R. 462 at 11.) The government concludes that given these circumstances the court should find that defendant has not demonstrated extraordinary and compelling reasons for release. (R. 462 at 11-12.)

In reply, defendant expresses surprise at this response, as the government has in previous cases conceded that inmates with CDC-recognized risk factors may be eligible for compassionate release. (R. 464 at 4-5.) He further contends that it is hard to take seriously the government's suggestion that FMC Rochester is the safest place for him. (R. 464 at 5.) He also clarifies that he does not argue that his previous infection places him at higher risk but rather that not enough is known to assume that his previous infection effectively cancels out his risk factors. (R. 464 at 5-6.) He notes that serving out his full sentence, another six

12

months, would put him beyond the period of immunity found in the studies the government cited. (R. 464 at 6.) Finally, he contends that the possibility he will soon be vaccinated does not cancel out his current risk factors. (R. 464 at 6-7.)

Courts have found that inmates with defendant's characteristics—over the age of 70, with heart conditions and/or hypertension—are eligible for compassionate release during the pandemic. See, e.g., United States v. Whitted, No. 3:04-cr-0176, 2021 U.S. Dist. LEXIS 15706, at *12-15 (D.V.I. Jan. 28, 2021); Brown v. United States, No. ELH-00-0100, 2020 U.S. Dist. LEXIS 238008, at *32 (D. Md. Dec. 17, 2020); United States v. Diep Thi Vo, No. 15-cr-00310-BLF-2, 2020 U.S. Dist. LEXIS 81121, at *7-10 (N.D. Cal. May 7, 2020); Casey v. United States, No. 4:18-cr-4, 2020 U.S. Dist. LEXIS 80898, at *7-9 (E.D. Va. May 6, 2020). While it is true that defendant has not presented a medical opinion specifically discussing his risk, the record clearly establishes that he falls in the high risk category under CDC guidance.

Moreover, while defendant was able to recover from an infection last fall, the CDC has acknowledged that "some reinfections are expected."[8] Given this uncertainty, it would be unwise to adopt rigid rules, e.g., that a person who has recovered can never demonstrate extraordinary and compelling reasons, or that he is automatically immune for some period of time. See United States v. Hicks, No. 18-CR-227, 2020 U.S. Dist. LEXIS 213100, at *17 (E.D. Wis. Oct. 7, 2020). Rather, the court should make an individualized determination, which will "include consideration of the prisoner's specific medical problems and their severity, the course of his recovery from the virus, whether he displays any lingering symptoms or effects, and the conditions at his particular facility." Id.

---

[8] https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited March 3, 2021).

13

Here, as discussed above, defendant falls in the high risk category under CDC guidance, his COVID-19 case was symptomatic, and he may be experiencing lingering symptoms. Further, despite BOP's efforts to keep COVID out of FMC Rochester, the data reveal that 376 inmates and 57 staff members have been infected.[9] While I have no reason to doubt the quality of care defendant has received at the FMC, the issue is the degree of risk to which defendant is exposed in prison. See United States v. Chester, 463 F. Supp. 3d 342, 346 (W.D.N.Y. 2020) ("Prison settings present unique challenges in preventing the spread of any infectious disease."). Finally, I decline to speculate on when defendant may receive a vaccination.

For all of these reasons, I find that defendant has established extraordinary and compelling reasons. I thus turn to the § 3553(a) factors.

### 3. Section 3553(a) Factors

Defendant notes that, while the court initially determined that a 5-year sentence was warranted, it did not factor in that one of those years would be spent essentially in segregation, with limited visitation and programming, due to the pandemic. (R. 458 at 12.) He contends that the term he has served thus far has been sufficiently punitive and impressed upon him the seriousness of the offense. (R. 458 at 13.) He further contends that, with his release date approaching, there is no reason to believe that he needs to remain incarcerated for an additional 6 months in order for the sentence to deter, protect the public, or rehabilitate him. The instant offense is the only felony he has ever been convicted of, and it occurred more than two decades ago. Given his age, there is no reason for the court to be concerned about his

---

[9]https://www.bop.gov/coronavirus/ (last visited March 3, 2021).

future behavior. (R. 458 at 13.) Finally, defendant indicates that he has a solid release plan, living with his long-term girlfriend in Chicago. (R. 458 at 13-14.)

The government responds that the § 3553(a) factors weigh heavily against defendant's release. (R. 462 at 12.) The government relies primarily on the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. The government contends that while defendant pleaded guilty to a charge involving two biker events, these were not isolated incidents but rather part of a long running and bloody war between the Outlaws and their rivals. (R. 462 at 13.) The government notes that this conflict involved murders, arson, and the use of explosives. (R. 462 at 14.) The government further notes that defendant spent years as a fugitive; while his co-actors were convicted and sent to prison, he spent his younger years as a free man. (R. 462 at 14.) The government also notes that, while remote, defendant's record includes a number of prior convictions. (R. 462 at 14.) Finally, the government notes that defendant already received substantial consideration as part of his plea agreement, which called for a sentence below the guideline range, based in part on his age and health issues at the time. (R. 462 at 15.)

Had defendant brought this motion after serving a mere fraction of his sentence, I might have been persuaded by the government's argument. At this point, however, defendant has served about 90% of his sentence (accounting for good time).[10] See, e.g., United States v. Kirschner, 472 F. Supp. 3d 482, 483 (S.D. Ind. 2020) (finding that, despite the defendant's commission of a serious crime, releasing him "seven months early after he has served most

---

[10]Defendant was arrested on April 23, 2017, meaning that he has been in custody for a little over 46 months. With good time, a 60-month sentence equates to 51 months. 51/46=90.1%. At this point, defendant is due to be release in about 5-½ months.

15

of his sentence does not diminish the severity of the sentence or send the wrong message"). Defendant has been sufficiently punished for his crime, particularly in light of the additional punitiveness occasioned by pandemic-related restrictions, such as limited visitation. It is also worth noting that, under the usual course, defendant would likely have already been released to a halfway house or home confinement. But the BOP has apparently declined to offer defendant such transitional services because of the existence of an arrest warrant related to the retail theft charge leading to his apprehension in April 2017. (R. 464 at 8.) The state court issued a warrant in that case when defendant failed to appear, but that was because he was in custody in Wisconsin on this case, not because he wilfully missed court. (PSR ¶ 60.) Finally, given his age and limited prior record, releasing defendant early will not endanger the public. See United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders, at 23, 25 (Dec. 2017) (noting very low recidivism rates for defendants over 65 at the time of release).

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 458) is granted, and his prison sentence is reduced to time served. All other terms and conditions of the original sentence will remain as fixed. An amended judgment shall issue consistent with this order.

Dated at Milwaukee, Wisconsin, this 3rd day of March, 2021.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

16